IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG  8 2009

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

AMCO INSURANCE COMPANY,

        Plaintiff,

v.

HOME WAVES, INC., RON ONORATO
and MARK HIGGINS,

        Defendants.

CIVIL ACTION
NO. 1:08-cv-1902-GET

O R D E R

The above-styled matter is presently before the court on:

1) Plaintiff's motion for summary judgment [docket no. 59];

2) Defendants Mark Higgins and Ron Onorato's motion for
extension of page limitation [docket no. 66];

(3) the court's July 2, 2009 Order [docket no. 70].

Background

Plaintiff AMCO Insurance Company ("AMCO") provided a
commercial general liability policy to defendant Home Waves, Inc.
("Home Waves") during the period March 17, 2006 to March 17, 2007.
On March 27, 2007, Home Waves filed suit against defendant Ron
Onorato to recover the cost of installing certain networked home
systems.  Onorato answered the complaint and counterclaimed for
breach of contract, negligent selection of equipment, negligent
hiring and retention, negligent installation and service, breach of
warranty, fraudulent inducement, fraudulent failure to disclose,

unfair business practices and bad faith.  On September 24, 2007, Home Waves filed suit against Higgins to recover the cost of installing "low voltage wiring and various audio, video, control and security equipment."  Higgins counterclaimed that Home Waves failed to provide and install the home theater system in compliance with contractual expectations.  Home Waves tendered the counterclaims to AMCO for coverage and AMCO agreed to defend Home Waves pursuant to a reservation of rights.

AMCO filed its complaint on May 30, 2008 seeking a declaratory judgment that AMCO has no duty to defend or indemnify the counterclaims asserted by Onorato or Higgins in the underlying lawsuits.  On February 23, 2009, Home Waves' counsel of record was terminated from the case.  No new counsel has made an appearance on behalf of Home Waves.

On April 22, 2009, plaintiff filed a motion for summary judgment.  Defendants Higgins and Onorato filed a joint response to the motion.  Defendant Home Waves failed to respond.

On July 2, 2009, this court issued an order requiring Home Waves to notify the court of its current counsel within fifteen days.  The court advised that after the expiration of the fifteen days the court "will consider any and all pending motions according to the record as it exists on that date."  Although the fifteen day period has expired, Home Waves has not provided the court with the name of new counsel nor has it filed a response to plaintiff's

motion for summary judgment.  Therefore, the court will consider the motions based on the record before it.

## Motion to Exceed Page Limitations

Defendants Higgins and Onorato filed a motion to file a response to plaintiff's motion for summary judgment that exceeds the page limits.  Defendants Higgins and Onorato's motion for an extension of page limitation [docket no. 66] is GRANTED and the court has considered their joint response in deciding plaintiff's motion for summary judgment.

## Motion for Summary Judgment

### Standard

Courts should grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The moving party must "always bear the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  That burden is 'discharged by 'showing' − that is, pointing out to the district court − that there is an absence of evidence to support the nonmoving party's case."  Id. at

325; see also U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991).

Once the movant has met this burden, the opposing party must then present evidence establishing that there is a genuine issue of material fact. Celotex, 477 U.S. at 325. The nonmoving party must go beyond the pleadings and submit evidence such as affidavits, depositions and admissions that are sufficient to demonstrate that if allowed to proceed to trial, a jury might return a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). If he does so, there is a genuine issue of fact that requires a trial. In making a determination of whether there is a material issue of fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Id. at 255; Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987). However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. Id. at 248. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof, and (2) the summary judgment

Page 4

movant has made a plausible showing of the absence of evidence of the necessary element. <u>Celotex</u>, 477 U.S. at 323.

<u>Facts</u>

In light of the foregoing, the court finds the following facts for the purpose of resolving this motion for summary judgment only. Home Waves provides home automation services and systems to customers in the State of Georgia. Onorato contracted with Home Waves to design and install a home automation system at his home in Alpharetta, Georgia. Higgins contracted with Home Waves to design and install certain upgrades to Higgins' home security system and to install a certain home theater functionality.

AMCO issued a general commercial liability policy to Home Waves. The policy was effective from March 17, 2006 to March 17, 2007. The policy provided coverage for property damage that was caused by an occurrence. The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Property damage is defined as: "physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it." The policy excluded from coverage property damage "expected or intended from the standpoint

Page 5

of the insured." The policy also excluded from coverage "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations or that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Also, the policy excludes property damage to "impaired property" or property that has not been physically damaged arising out of "a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

Both Oronato and Higgins alleged in their counterclaims that Home Waves intentionally made false statements concerning its experience and abilities in designing, installing, and servicing the home installations with the purpose of deceiving them into entering into a contract with Home Waves to install the home systems. Home Waves tendered the counterclaims filed by Onorato and Higgins and requested that AMCO defend the counterclaims. On July 18, 2007, Todd Alkire of AMCO sent Home Waves a letter agreeing to defend Home Waves against Onorato's counterclaims but reserving its rights to dispute coverage and assert any and all coverage defenses. On July 20, 2007, Kelly Jackson of AMCO sent Robert Rose of Home Waves another letter agreeing to defend Home

Waves against Onorato's counterclaims but reserving its rights to dispute coverage and assert any and all defenses.  On February 4, 2008, Kevin Paschall of AMCO sent Robert Rose of Home Waves a letter agreeing to defend Home Waves against counterclaims asserted by Higgins, but reserving its rights to dispute coverage and assert any and all coverage defenses.

In the underlying lawsuit, Higgins alleged that Home Waves' work was so destructive that he was forced to leave his home, that Home Waves broke his AC/Heating System, and that Home Waves broke an automatic front gate control.  Onorato alleged that Home Waves failed to install a surge protector on his home system and that this resulted in damage to 13 separate pieces of home automation equipment when lightning struck a telephone wire.  The damaged equipment was not that equipment furnished and installed by Home Waves, but rather equipment furnished and installed by another company to replace the allegedly faulty equipment installed by Home Waves.

<u>Discussion</u>

Under Georgia law, contracts of insurance are interpreted by the ordinary rules of contract construction.  <u>Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.</u>, 269 Ga. 326, 327 (1998).  Where the terms of the contract are clear and unambiguous, the court is to look to the contract alone to ascertain the parties' intent. <u>Id.</u> at 328.  The contract is to be considered as a whole and each

Page 7

provision is to be given effect and interpreted so as to harmonize with the others. Id. Any ambiguities in the contract are to be construed against the insurer as the drafter of the document. Id.

First, AMCO argues that because the counterclaims do not allege an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," that coverage does not apply. Georgia courts have construed "accident" to signify "an unintended happening rather than one occurring through intention or design." City of Atlanta v. St. Paul Fire & Cas. Ins. Co., 231 Ga. App. 206, 208 (1998); see Allstate Ins. Co. v. Grayes, 216 Ga. App. 419, 421 (1995); see also O.C.G.A. § 1-3-3(2). Insurance policies with similar language to AMCO's policy at issue here have been construed to cover injury resulting from accidental acts and not injury accidentally caused by intentional acts. Providential Life and Accident Ins. Co. v. Hallum, 276 Ga. 147 (2003); see Owner's Ins. Co. v. James, 295 F. Supp. 2d 1354, 1364 (N.D. Ga. 2003); see also Clean Air America, Inc. v. Hartford Casualty Ins. Co., 2007 U.S. Dist. LEXIS 31461, *7.

The damages alleged in the underlying action did not result from an accidental act but were accidentally caused by the intentional acts of Home Waves' designs and services. Thus, there was no occurrence under the terms of the policy and defendants are not entitled to indemnity from plaintiff. Accordingly, plaintiff's

motion for summary judgment [docket no. 59] is GRANTED.  As the court has determined that there is no coverage under the policy for the underlying action, the court need not address defendant's alternative arguments.

### Summary

1) Plaintiff's motion for summary judgment [docket no. 59] is **GRANTED** and;

2) Defendants Mark Higgins and Ron Onorato's motion for extension of page limitation [docket no. 66] is **GRANTED**.

**SO ORDERED**, this ___3___ day of ~~July~~ Aug, 2009.

G. ERNEST TIDWELL, JUDGE
UNITED STATES DISTRICT COURT

Page 9